In re

    Paul Edward Murray,                          Case No.: 05-23626-svk

                        Debtor                                    (Chapter 7)

**Memorandum Decision on U.S. Trustee's
Objection to Debtor's Attorneys Fees**

        Attorneys who represent consumers in bankruptcy cases commonly charge a flat fee for a standard bundle of services. Since legal fees are subject to court approval, "presumptively reasonable fees" or "no-look fees" have developed to save time for the court, trustees and the attorneys who represent debtors.[1] If the attorney for the debtor charges the no-look flat fee for basic services such as pre-bankruptcy consultation, preparation of the bankruptcy schedules, attendance at the meeting of creditors and review of reaffirmation agreements, the fee will be approved without any itemization of the time spent or detail as to the services rendered. In this district, the flat fee for a routine chapter 7 case is $700 to $800, plus the filing fee.[2] Representation of the debtor in adversary proceedings, such as discharge objections, is almost never included in a flat fee. This case involves a variation on the flat fee theme, in which an attorney charged a flat fee of $2,000 for all services that would be required in the case, including representation in adversary proceedings and exemption challenges.

        From the docket, the case looks very routine. The Debtor filed a chapter 7 petition on March 17, 2005. A § 341 meeting of creditors was held on April 29, 2005, and the Trustee filed

---

[1] For example, Local Bankruptcy Rule 2016.1 provides: "A fee of $1,500 or less may be allowed as an administrative expense in a chapter 13 case without a formal fee application."

[2] The flat fee is expected to increase for cases filed under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

a "no-asset report" on May 5, 2005. The last day for creditors to file a dischargeability complaint was June 28, 2005; no such complaint was filed. On June 23, 2005, the United States Trustee filed a "Motion for a Determination of Reasonable Value of Services Pursuant to F.R.B.P. 2017 & 11 U.S.C. § 329," objecting to the Debtor's attorneys fees for the chapter 7 case. A hearing was held at which the Debtor, the attorney and the panel trustee testified. This Memorandum Decision addresses the U.S. Trustee's objection, and the fee structure employed by the attorney in this case.

Testimony at the hearing established that the Debtor met the attorney approximately 18 months prior to the bankruptcy. At that time, a Bank was pursuing the Debtor to collect a $35,000 commercial loan. According to the Debtor, the loan was secured by a rock crusher that had been abandoned by the Debtor when his excavating business failed. The Debtor testified that the rock crusher was at a friend's salvage yard. The Bank did not repossess the rock crusher; instead, it garnished the Debtor's bank account. The Debtor hired the attorney and paid the attorney approximately $2,000 to fight the garnishment. The attorney was successful and recovered some of the money that had been garnished, although the Bank retained about $800. Apparently no effort was made to compel the Bank to accept its collateral in satisfaction of the debt.

The attorney offered the Bank a cash settlement of $10,000 to be funded by the Debtor's parents, and threatened that if the settlement offer was not accepted, the Debtor would file bankruptcy. The Bank rejected the cash offer, which the attorney interpreted as an indication that the Bank intended to continue to aggressively pursue the Debtor. Apparently all of the negotiations with the Bank's attorney were verbal, and no correspondence or demand letters were offered into evidence.

2

When the Bank rejected the settlement offer, the attorney offered the Debtor a choice of one of three options for paying the legal fees[3] for the chapter 7 bankruptcy: (1) an hourly rate of $200 per hour; (2) a "base bankruptcy fee" of $1,000, which would have included preparation of petition and schedules, representation at the § 341 meeting of creditors and preparation, but not negotiation, of reaffirmation agreements; or (3) a $2,000 "flat fee" to cover any work that could arise in the bankruptcy case.[4] The Debtor chose the $2,000 flat fee.

The Debtor and the attorney justified the flat fee based on three potential complications in the case: (1) the Bank's pre-petition collection philosophy foreshadowed a possible challenge to the dischargeability of the Bank's claim; (2) the Debtor's ownership of some specialized audio equipment which was claimed exempt as tools of the trade and household goods; and (3) the Debtor's ownership of a triplex, which was claimed exempt as the Debtor's homestead. The Debtor's attorney anticipated that the trustee or a creditor could object to the exemptions of the triplex or the musical equipment, and the flat fee would have covered attendance at a hearing and defense of the exemptions.

However, the panel trustee testified at the hearing that the triplex was subject to a mortgage that was cross-collateralized by a number of other properties, and the trustee had no interest in the debtor's specialized sound equipment. Accordingly, the trustee did not object to the exemptions or attempt to sell the triplex or the audio equipment. Moreover, the Bank did not attend the § 341 meeting of creditors and never filed any complaint objecting to the discharge of

---

[3] None of the fee structures included the $209 filing fee for the chapter 7 case.

[4] Actually the compensation disclosure form filed by the Debtor's attorney *excludes* representation of the debtor in adversary proceedings and other contested bankruptcy matters. Testimony at the hearing, however, clarified that this representation would have been covered by the fee.

3

its claim. As a result, the Debtor paid a fee of $2,000 for legal services that would have cost significantly less based on an hourly rate.

According to the invoices provided, the attorney spent less than 2 hours on this case (not including travel time to the meeting of creditors and responding to the U.S. Trustee's questions about the fees) and the paralegal (whose rate must be less than $200 per hour) spent just over 2 hours, although the attorney suggested that the paralegal spent another unrecorded hour entering the information for the schedules into the computer. Assuming that the paralegal's billing rate is $100 per hour and she spent 3 hours on the Debtor's case, and the attorney's billing rate is $200 per hour, and he spent 2 hours on the case (not including travel time to the meeting of creditors or dealing with the U.S. Trustee's fee objection), the total fee on an hourly basis would have been $700. Even assuming the paralegal billed her time at $200 per hour and the attorney could charge his full hourly rate to travel to and from the meeting of creditors, the total fee on an hourly basis, exclusive of responding to the fee objection, is $1,500.

The chapter 7 trustee has represented bankruptcy debtors for about the same number of years as the Debtor's attorney, and enjoys the additional experience of serving as a panel trustee, exposing him to a broad spectrum of chapter 7 cases and the legal fees charged for those cases. The Trustee testified that in his opinion, the Debtor's case was mostly a garden-variety bankruptcy, with a bit of complication created by the number of rental properties owned by the Debtor. The Debtor owns 8 rental properties, and the preparation of Schedule A required extra time and effort to match all the correct values and legal descriptions. However, according to the Trustee, the extra work to prepare Schedule A was offset by the lack of information required for Schedule F – the list of general unsecured creditors. That Schedule contains only two names: the attorney for the Bank and a credit card company. The Trustee testified that Green Bay area

4

Case 05-23626-svk    Doc 10    Filed 09/06/05    Page 4 of 9

attorneys generally charge $700 to $800 plus the filing fee for a garden-variety chapter 7 case. The Trustee opined that given the potential complications in this case, a fee of $1,200 would have been reasonable.

The court reviewed the chapter 7 cases that were filed in this district on March 16, 17 and 18, 2005, around the same time as the Debtor's case. The fees charged by the debtors' attorneys in these cases ranged from $590 to $991. Some of the cases are asset cases, and the case with the $991 fee includes a trustee's objection to exemptions. Excluding the Debtor's case, the average fee for these cases was $721.

The Debtor's attorney relies on *In re Novitzke*, 120 B.R. 483 (Bankr. W.D. Wis. 1990), in which a Western District Bankruptcy Judge approved a flat fee of $3,000 for a chapter 7 farm case over the objection of the U.S. Trustee. *Novitzke* is distinguishable on several levels. First, the debtors' attorney in that case spent 32.2 hours working on the case, which would have resulted in a fee of over $2,500 based on a hypothetical hourly rate. Here, the Debtor's attorney and paralegal spent a combined total of 5 hours working on the Debtor's case (not including travel time).

Next, as a farm case filed under the prior Wisconsin exemption scheme, the case was "more novel" than most chapter 7 bankruptcies, due to the challenges in claiming exemptions in farm equipment.[5] *Id.* at 486. Moreover, *Novitzke* appears more complex than the average farm case, involving a ginseng crop and genetically improved young stock. While the Debtor's

---

[5] The old exemption statute allowed the exemption of specific items such as 8 cows, 10 swine, 2 horses or mules, 1 plow, 1 drag and 1 binder. While working with this antiquated statute may have been more difficult, it was also more fun. When a trustee objected to the debtor's exemption of an expensive racehorse, in an unpublished opinion, Western District of Wisconsin Bankruptcy Judge Martin exclaimed: "A horse is a horse, of course, of course!" *See also In re Gallegos*, 226 B.R. 111 (Bankr. D. Idaho 1998).

5

attorney may point to the novel exemption issues in this case, the court is unimpressed with the alleged difficulty of claiming the Debtor's triplex and audio equipment as exempt.

The Debtor's attorney stated that no reported Wisconsin bankruptcy case holds that a debtor's interest in a triplex can be claimed exempt as a homestead, but in *Roche v. DuBois*, the Wisconsin Supreme Court sanctioned the exemption of a parcel of 16 cottages, one of which was occupied by the debtors. 223 Wis. 438, 271 N.W. 84 (1937), *overruled in part and on other grounds by Ohio Cas. Ins. Co. v. Holz & Holz, Inc.,* 24 Wis. 2d 587, 129 N.W.2d 330 (1964). More recently, Wisconsin courts have approved the exemption of a duplex, and noted that exemptions, especially the homestead, are to be liberally construed in the debtor's favor. *Schwanz v. Teper*, 66 Wis. 2d 157, 163, 223 N.W.2d 896 (1974). Wisconsin case law leaves little doubt that the exemption of the Debtor's interest in the triplex would pass muster. Further, as pointed out by the Trustee, the triplex was subject to a mortgage that was cross-collateralized by numerous other properties. It is therefore questionable whether there was any equity in the triplex for the Debtor to exempt.

The Debtor's attorney also feared that the audio equipment exemption – part as tools of the trade and part as household goods – would elicit an objection. According to the Debtor and his attorney, a portion of the audio equipment was being used to professionally mix and record music for bands, and the Debtor used other items of the equipment for personal use. Given the use of the equipment by the Debtor, there could be little argument that the exemptions were proper. The equipment was appraised, and with few exceptions, no individual item is valued at more than $500; the total of all of the equipment is less than $11,000. Assuming the truth of the assertions about the Debtor's use of the equipment, the relatively low value of the equipment and

6

limited market and cost to liquidate such specialized equipment, the attorney's concerns about an objection to the exemption or valuation of the audio equipment appear unjustified.

Perhaps the biggest difference between this case and *Novitzke* is that in *Novitzke*, the legal services could have been anticipated in advance by the debtor. For example, Novitzke's attorney negotiated an extensive settlement with Novitzke's bank concerning the ginseng crop and genetically improved young stock. It would have been obvious to Novitzke and his attorney that the bank's claims concerning the crop and the animals would have to be determined in the bankruptcy. The bank's interests could be litigated or settled, but, given the unusual nature of the bank's collateral, the claims would surely need to be addressed. This case lacks such certainty. While it was possible that the Trustee would object to the exemption of the triplex or the audio equipment, it was equally possible that he would not. The Bank could have filed a nondischargeability complaint, but such actions are expensive, difficult for creditors to win and rarely cost-effective for a $35,000 loan. The attorney's prediction of the Bank's probable theory – false financial statement or abandonment of collateral – was unconvincing. Presumably if the Bank had a claim for the abandonment of the rock crusher, the claim would have been made in the pre-bankruptcy lawsuit or in a written demand letter from the Bank. If the issue of a fraudulent financial statement had been raised prior to the bankruptcy, there may have been a reasonable expectation that the claim would need to be addressed in the bankruptcy, and a flat fee that included the anticipated discharge litigation would be reasonable. But in this case, the only factor pointing to a potential nondischargeability complaint was the Bank's attorney

7

Case 05-23626-svk    Doc 10    Filed 09/06/05    Page 7 of 9

rejection of a generous settlement offer even though the Debtor threatened to file bankruptcy.[6] The certainty and complexity that justified the $3,000 fee in *Novitzke* is simply not present here.

A large flat fee to cover litigation that may or may not be filed is fraught with another problem. In *In re Geraci*, the Seventh Circuit Court of Appeals cautioned that legal fees in bankruptcy cases are subject to careful scrutiny to avoid the potential problem of overreaching by the debtor's lawyer. 138 F.3d 314, 321 (7th Cir. 1998). The debtor's attorney is of course an expert in bankruptcy law, and in a far stronger position than his client to gauge the likelihood that litigation will be filed. There is considerable room for mischief in explaining to the debtor what the flat fee includes, the probability that the litigation will be pursued and whether the debtor or the lawyer will receive the bargain created by the flat fee.

*Geraci* also explains that Section 329(b) of the Bankruptcy Code authorizes the bankruptcy court to assess the reasonable value of the services that counsel *provided* and compare that value with the amount that the debtor paid. *Id*. at 318. In this case, the reasonable value of the services actually provided, based on an hourly rate of $200 for the attorney and $100 for the paralegal, is only $700. Approving the flat fee of $2,000 would compensate counsel for services that were not provided. Although a "cushion" in a flat fee is acceptable, a $1,300 excess fee over the services provided is not reasonable.

Flat fee arrangements for routine cases are to be encouraged. They are simple and save time, eliminating the need for attorneys to prepare fee applications, trustees to police the applications and courts to approve them. By saving time and effort, the result should be lower

---

[6] Since the Debtor had only 2 other creditors other than the Bank (the credit card company and the mortgagee on the real estate), the Bank may not have taken seriously the Debtor's bankruptcy threat.

8

fees for debtors – people who, after all, are seeking bankruptcy relief.  But a flat fee arrangement charging more than twice the district average fee, based on an unsubstantiated fear that litigation may be filed, is different.  This arrangement leaves too much room for overreaching by an attorney over an unsophisticated client and violates *Geraci's* implication that legal services must actually be *provided* in order to be approved as reasonable.

    A fee of $2,000 for this case exceeds the reasonable value of the services provided.  A fee of $1,000 would be reasonable to cover the actual legal work done and the travel time to the meeting of creditors at a reduced rate.  A separate order will be issued requiring the attorney to pay $1,000 to the Trustee in this case as a refund of the excessive fee.

Dated: September 6, 2005

                                                       By the Court:

                                                       /s/ Susan V. Kelley
                                                       Susan V. Kelley
                                                       U.S. Bankruptcy Judge